Argued November 25, demurrer sustained December 8, 1914.

## STATE EX REL. *v.* BEALS, MAYOR.

(144 Pac. 678.)

**Mandamus—Issuance of Writ—Right to.**

1. Under Section 613, L. O. L., providing for the issuance of *mandamus* to compel the performance by any inferior court, corporation, board or officer of an act which the law enjoins as a duty resulting from such office or station, a person seeking a writ of *mandamus* to compel the common council of a city to levy a tax to pay a private claim must show a demand made upon the common council or city, and it is insufficient that demands for payment were made upon the treasurer, who is without authority to levy such tax.

> [As to right of individual to *mandamus* to enforce performance of duty by court or a magistrate, see note in Ann. Cas. 1912A, 1118.]

Original proceeding in Supreme Court.

This is an original proceeding by the State on the relation of the Warren Construction Company a corporation, for a writ of *mandamus* against F. R. Beals, as mayor, John Aschim, as recorder, N. J. Myers, as marshal, Mark Harrison, as treasurer, and John Keldson, George Edmunds, George Lamb, S. A. Brodhead and M. Melchior, as members of the common council of Tillamook City, a municipal corporation in the State of Oregon. The defendants interposed a demurrer to alternative writ. DEMURRER SUSTAINED.

For defendants there was a brief with oral arguments by *Mr. H. T. Botts* and *Mr. John M. Gearin.*

For plaintiff there was a brief over the names of *Mr. Prescott W. Cookingham* and *Messrs. Wood, Montague & Hunt,* with oral arguments by *Mr. Richard W. Montague* and *Mr. Cookingham.*

In Banc. MR. JUSTICE RAMSEY delivered the opinion of the court.

The petitioner brought this proceeding in this court to obtain a writ of *mandamus* to compel the proper officials of Tillamook City to levy a tax to obtain funds with which to pay a demand owing by said city to the relator. An alternative writ was issued out of this court and directed to the defendants, commanding the members of the common council of said city, within ten days from the date of said writ, to hold a meeting of said council and levy upon the assessable property within said city a sufficient tax to raise money to enable said city to pay to the relator its said demand, amounting to $16,719.45 and interest thereon, or show cause why they had not made said levy, etc. The defendants failed to make said levy, and, for the purpose of showing why they had not done so, they filed a demurrer to the alternative writ, alleging that it does not state facts sufficient to entitle the petitioner to the relief mentioned in said writ. The parties appeared by their counsel and argued said demurrer, and it was taken under advisement by the court.

It appears from said alternative writ, *inter alia,* that on May 31, 1912, the relator entered into a contract with Tillamook City, whereby it undertook to construct and install for said city certain sewers in said city according to certain specifications agreed upon by the relator and said city, and that said city agreed to pay the relator for constructing and installing said sewers a sum equal to the cost of the labor and materials used therein, and also 10 per cent additional on the said cost for superintendence and use of the necessary equipment in constructing said sewers. The relator constructed said sewers accord-

ing to said contract, and the same were accepted by said city. The cost of the labor and materials for said sewers amounted to $15,199.50, and the relator was entitled to 10 per cent of said cost additional for superintending the construction of said sewers and for the use of the equipment used therein, amounting to $1,519.95. The total amount due the relator from said city for constructing said sewers was $16,719.45, The common council of said city, on the 7th day of October, 1912, audited the relator's claim for constructing said sewers, and allowed it therefor said sum of $16,719.45, and ordered the city recorder of said city to draw a warrant upon the treasurer of said city requiring him to pay to the relator or its order said sum of $16,719.45 out of the general fund of said city, for labor and materials used in the construction of said sewers. The city recorder of said city, in accordance with the said direction of the common council of said city, on October 8, 1912, duly issued to the relator a warrant upon the treasurer of said city for the payment to the relator or its order of the said sum of $16,719.45, audited and allowed as stated *supra*. On October 8, 1912, the relator duly presented said warrant to the then treasurer of said city and demanded payment thereof; but said treasurer did not pay any part of said warrant and made the following indorsement thereon, to wit:

"Presented October 8, 1912. Not paid for want of funds.                    [Signed]  T. A. RHODES,
                                    "City Treasurer."

At the time that said warrant was so presented for payment and indorsed as stated *supra*, there were no funds in the treasury of said city to pay the same. The said writ states, also, the following:

"Since the refusal to pay said warrant, as hereinbefore set forth, demands had been made on the city

treasurer for payments thereof. But neither Tilla-mook City nor anyone acting in its behalf has made any payments whatever on said warrant, either to the petitioner or anyone acting in its behalf; and there is now due and payable to the petitioner herein from Tillamook City the sum of $16,719.45, together with interest thereon at the rate of 6 per cent per annum from October 8, 1912, on which date payment of said warrant was refused. There is not now in the city treasury a sufficient sum to meet said warrants, nor has there been a sufficient sum in the past, when demands were made for payment."

The only demands for payment of said warrant stated in said writ are set out *supra*. The only demands made were upon the treasurer. There was no demand made upon said city, or any officer thereof, that said city or its common council should levy upon the taxable property in said city a tax to obtain funds to pay said warrant. The relator does not appear to have done anything to collect said warrant, except to demand payment thereof of the city treasurer.

The first point made by the defendants is that the alternative writ is insufficient, in that it does not state that the relator, prior to the commencement of this proceeding, made any demand upon said city, or upon any of its officers, that said city or its common council levy a tax upon the property taxable within said city to raise funds with which to pay the relator's said warrant. The only demand that the writ states was made was a demand on the treasurer that he pay said warrant. Payment of the warrant was demanded more than once. The treasurer had no power to levy a tax.

Section 613, L. O. L., provides for the issuance of a writ of *mandamus* as follows:

"It may be issued to any inferior court, corporation, board, officer or person, to compel the perform-

ance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station," etc.

The relator is the owner and holder of an unpaid warrant issued to it by said city. The said warrant is the private property of the relator, and the relator is a private corporation. The relator is seeking a peremptory writ of *mandamus* to compel said city or its common council to levy a tax on the property taxable in said city to obtain funds to pay to the relator the amount due upon said warrant. Said warrant and the debt evidenced thereby are the private property of the relator. The public has no interest therein. The question for determination is: Was it necessary that the relator, before beginning this proceeding, should make a demand upon said city, or its common council, that said city, or its common council, levy a tax to obtain funds with which to pay the relator said warrant, and that said demand should be refused? Moses, Mandamus, pages 204, 205, says:

"The petition for a writ of *mandamus* should present to the court a *prima facie* case of duty on the part of the defendant to perform the act demanded, and an obligation to perform it; otherwise, the alternative writ will not be granted. It should also appear from the petition that a demand has been made on the defendant to do the thing he is sought to be compelled to do, and that he has refused or neglected to do it. * * And the facts and circumstances under which the petitioner claims the relief prayed for should be stated fully, clearly and unreservedly, and not inferentially."

Short, Extraordinary Remedies, pages 247, 248, says:

"The court, before it will grant a *mandamus,* must be convinced that there has been a demand made, by a party having a right to make it, for the performance

of the duty sought to be enforced, and a refusal to perform it by the party against whom the application is made.''

Merrill, Mandamus, Section 222, says:

''A demand must be made on the proper officer to perform the duty desired before a writ of *mandamus* will be issued to compel him to discharge such duty. It would be an abuse of justice to convict one of nonfeasance or misdemeanor in neglecting his official duty when he has not refused to do what may be required, and to mulct him in costs when he is not in default, The writ only issues as a matter of necessity and when there is no other means of obtaining the discharge of the duty incumbent on the officer. Consequently this writ will not be issued to compel an officer to do an act which he has not been asked to do. The demand must be for the specific thing which ought to be done, untrammeled by any condition which may make the refusal qualified, instead of absolute.''

In 2 Bailey, Habeas Corpus and Other Extraordinary Remedies, pages 792, 793, the author says:

''When the duty to be performed is of a public nature, no duty to demand its performance devolves upon anyone, and express demand for its performance is not required as a condition of application for the writ. The law itself stands in the place of the demand, and the omission to perform stands in the place of a refusal. * * The rule is otherwise as to duties which do not partake of a public nature, and more nearly affect private rights. In such cases, express demand is required, and a refusal to comply with such demand, either direct or by conduct, must appear.''

In Spelling, Injunction and Other Extraordinary Remedies (2 ed.), Section 1381, the author says:

''The authorities are not harmonious on the question as to when a demand is necessary as a precedent condition to granting the writ. It is undoubtedly the general, if not undeviating, rule that, in cases where

private rights only are involved, a demand must be made and alleged. There is a distinction, however, between cases involving mere private right to have a duty performed, and those in which public interests generally are affected, and in which one citizen has the same interest in the performance of a public duty as another. When no such general interests are involved, and merely private rights are affected, the relator must, in a proceeding by *mandamus,* allege and prove demand and refusal by the person or persons whom it is sought to coerce by the writ; but when a duty is strictly of a public nature, as where it is due by a public officer, and is not a special duty affecting peculiarly the relator, there is no one specially empowered to demand its performance, and there is no necessity for a demand and refusal.''

In his Extraordinary Legal Remedies (3 ed.), Section 41, Mr. High says:

''The question of the necessity of a demand and refusal to perform the duty in controversy is one not wholly free from doubt, and an apparent conflict of authority may be observed in the adjudications upon this subject. The doctrine has been broadly asserted, and is sustained by the most respectable authorities, that in no event will the writ be granted to compel the performance of an official duty, until demand has been made upon the officer and he has refused to act. Other cases have gone only to the extent of insisting upon proof of demand and refusal before granting the writ in absolute or peremptory form. The better doctrine, however, and one which has the support of strong authority, is that which recognizes a distinction between duties of a public nature and affecting only the public at large, and those of a private nature especially affecting the rights of individuals. And it is held, where the person aggrieved has a private interest in or claims the immediate benefit of the act sought to be coerced, that he must first make a demand upon the officer to lay the foundation for relief by *mandamus.* But as regards duties of a strictly public nature, in-

cumbent upon public officers by virtue of their office, and which they are sworn to perform, no demand and refusal are necessary as a condition precedent to relief by *mandamus*. In such cases, no individual interests being affected, there is no one specially empowered to demand performance of the duty, and no necessity for a literal demand and refusal."

Judge Arthur L. Sanborn, in 26 Cyc., pages 442, 443, says:

"The petition or alternative writ must allege fact showing that respondent has been guilty of acts which constitute a breach of the duty enjoined upon him, or that he has failed to perform that duty. In order to show that respondent is in default in cases where a private right is sought to be enforced, the petition or alternative writ must as a rule, allege that performance of the duty has been demanded of respondent and that he has refused or failed to perform it. In cases where a public right is sought to be enforced, however, no demand need be alleged."

In *United States* v. *Boutwell*, 17 Wall. 604, 607 (21 L. Ed. 721), a *mandamus* case, the court says, *inter alia:*

"It [a *mandamus* proceeding] is therefore, in substance, a personal action, and it rests upon the averred and assumed fact that the defendant has neglected or refused to perform a personal duty, to the performance of which by him the relator has a clear right. Hence it is an imperative rule that, previous to making application for a writ to command the performance of any particular act, an express and distinct demand or request to perform it must have been made by the relator or prosecutor upon the defendant, and it must appear that he refused to comply with such demand, either in direct terms or by conduct from which a refusal can be conclusively inferred."

While there is some conflict in the authorities, the rule sustained by the great weight of authority is that

the alternative writ must allege facts showing that the defendants have been guilty of acts which constitute a breach of the duties imposed upon them, or that they have failed to perform such duties. And where the defendants are in default, in cases where private rights are sought to be enforced, the alternative writ must, as a rule, allege that the performance of the duties which the petitioner seeks to compel has been demanded of the defendants, and that they have refused or failed to perform them. The alternative writ in this case fails to allege that the relator at any time demanded of Tillamook City, or of its common council, or of either of the defendants, that said city, or its common council, levy a tax upon the property subject to taxation by said city for the purpose of raising funds to pay the relator's said warrant. The only demand stated in the alternative writ was made upon the treasurer of said city for the payment of said warrant, and it is stated by said writ that he at no time had sufficient funds to make said payment. The relator is the only person that is interested in said warrant or the indebtedness evidenced thereby. Said claim is the private property of the relator.

Under the law *supra* it was incumbent upon the relator, before commencing this proceeding, to demand of said city, or its common council, that said city, or its common council, levy a tax for the purpose of obtaining funds to pay said warrant, and it was necessary, also, that said demand be refused. No such demand was made, and hence the alternative writ fails to state facts sufficient to show *prima facie* that the writ of mandamus should be issued herein.

We do not find it necessary to pass upon the question whether the relator could maintain a *mandamus* proceeding, based on said warrant, or whether a judg-

ment thereon should be obtained before commencing such proceeding. The authorities bearing upon that question are irreconcilably conflicting.

The demurrer to the alternative writ is sustained.

DEMURRER SUSTAINED.